**In re Terry W. DICKERSON and Tammy Gay Dickerson, Debtors.**

**Bankruptcy No. 98–60409–13.**

United States Bankruptcy Court, E.D. Texas, Tyler Division.

Feb. 19, 1999.

---

J. Bennett White, Tyler, TX, for debtors.

Scott D. McDonald, Gardere & Wynne, L.L.P, Dallas, TX, for John Deere.

## OPINION

DONALD R. SHARP, Chief Judge.

NOW before the Court is John Deere Construction Equipment Company's Amended Motion To Dismiss Chapter 13 Case and the Amended Motion By Creditor Utraco Plant and Machinery, Ltd., to

Dismiss Chapter 13 Case. This opinion constitutes the Court's findings of fact and conclusions of law as required by Fed. R.Bankr.Proc. 7052 and disposes of all issues before the Court.

## FACTUAL AND PROCEDURAL BACKGROUND

Terry W. and Tammy G. Dickerson, the Debtors herein (the "Debtors"), initiated this bankruptcy proceeding by filing a petition for relief under Chapter 13 of Title 11 of the U.S. Code on February 23, 1998 (the "Chapter 13 Proceeding"). Previously, on May 6, 1997, the Debtors filed a petition for relief under Chapter 7 and received a discharge on or about November 25, 1997. Excepted from that discharge, pursuant to judgments in Adversary Proceedings 97–6097, 97–6095 and 97–6100, were the claims of John Deere, Caterpillar Financial Services Corp., and Utraco Plant and Machinery against Terry Dickerson. The Debtors included the aforementioned debts in their Schedules and Statement of Financial Affairs filed in this Chapter 13 proceeding. Pursuant to the Debtors' First Amended Chapter 13 Plan, which has not been confirmed as of this date, the Debtors propose to pay the Chapter 13 Trustee $100.00 per month for the first eight months of the Plan and $400 per month for the remaining 34 months of the Plan. In addition, the Debtors propose to pay "an amount from the sale of their residence as necessary to satisfy any shortfall in the ability of their plan payments to satisfy the allowed approved claim of the Internal Revenue Service."

On July 6, 1998, John Deere filed its Amended Motion To Dismiss Case (the "Motion") to which the Debtors responded. Utraco Plant and Machinery adopted John Deere's pleading by reference, adding no

additional argument or information. The two motions came before the Court pursuant to regular setting and were taken under advisement at the conclusion of the trial on the merits.

## DISCUSSION

11 U.S.C. § 1307(c) provides that "Except as provided in subsection (e) of this section, on request of a party in interest or the United States Trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including ...". A nonexhaustive list of possible causes follows which includes, *inter alia*, unreasonable delay, nonpayment of fees, failure to commence payments timely, denial of confirmation, failure to maintain payments and others. Generally, the language "for cause" indicates that matters are within the sound discretion of the Court.

John Deere Construction Equipment Company and Utraco Plant and Machinery[1] ("John Deere") aver that dismissal of the Dickerson bankruptcy is appropriate because the Debtors lack good faith both in filing the petition for relief and in proposing the plan of reorganization.[2] John Deere's Motion states that the Debtors' case should be dismissed "for cause", because the Debtors' primary motivation in filing Chapter 13 was to discharge their otherwise non-dischargeable obligations and for failure to amend admitted inaccuracies in their Schedules and Statements of Financial Affairs. John Deere also complains that the Debtors' Plan term, as originally proposed, was only 36 months and that "the Debtors' multiple bankruptcy filings, together with the other facts

---

**1.** Insofar as Utraco Plant and Machinery adopted John Deere's pleading by reference, adding no additional argument or information, references to John Deere's Motion should be read to include Utraco's Motion as well.

**2.** Issues pertinent to confirmation will not be dealt with here. Confirmation of the Plan of Reorganization was scheduled pursuant to regular setting and will be treated as a separate matter.

discussed above, indicate an abuse of the provisions, purpose and spirit of Chapter 13."

John Deere's characterization of two non-concurrent filings as "multiple" lacks credibility and need not be addressed further. John Deere's complaint regarding the Debtors' failure to amend their Schedules and Statement of Financial Affairs can also be disposed of rapidly: since the filing of the Motion, the Debtors have filed amended Schedules and Statements, curing the latter objection. The evidence failed to show that any inaccuracies in the Debtors' Schedules and Statements of Financial Affairs were the product of an attempt to mislead the Court or the creditors, as opposed to mere mistake or inadvertence.

■ John Deere's other arguments cannot prevail. The Supreme Court has ruled that a Chapter 13 reorganization is not categorically foreclosed to a debtor who previously filed for Chapter 7 relief. *Johnson v. Home State Bank*, 501 U.S. 78, 87–88, 111 S.Ct. 2150, 2156, 115 L.Ed.2d 66 (1991). The Fifth Circuit has ruled that a debtor is not barred as a matter of law from filing a Chapter 13 after a discharge has been entered in a Chapter 7 proceeding. *In re Aichler*, 182 B.R. 19 (Bkrtcy. S.D.Tex.1995) citing to *In re Saylors*, 869 F.2d 1434 (11th Cir.1989). In *Johnson v. Home State Bank*, the creditor argued that serial filings under Chapter 7 and Chapter 13 evade the limits Congress intended to place on such remedies. The Supreme Court disagreed, given that while Congress has expressly prohibited certain forms of serial filings, a Chapter 13 following a Chapter 7 was not prohibited. "The absence of a like prohibition on serial filings of Chapter 7 and Chapter 13 petitions, combined with the evident care with which Congress fashioned these express prohibitions, convinces us that Congress did not intend to categorically foreclose the benefit of Chapter 13 reorganization to a debtor who previously has filed for Chapter 7 relief." *Ibid.* at 87–88, 111 S.Ct. at 2156.

■ John Deere fails to support its allegation of bad faith. The fact that a debtor uses Chapter 13 to obtain discharge of a debt that would not be dischargeable in a prior Chapter 7 case is not bad faith as a matter of law. *In re Chaffin*, 836 F.2d 215 (5th Cir.1988) and *In re Aichler*, 182 B.R. 19 (Bkrtcy.S.D.Tex.1995). "Good faith" is not defined in the Code. Although it is not specified in the Code, good faith is an implicit jurisdictional requirement for granting relief under Title 11 and that lack of good faith is a basis for dismissal. *In re Zick*, 931 F.2d 1124, 1126–27 (6th. Cir.1991). In Chapter 13 cases, the Court assesses whether a debtor is acting in good faith and is not abusing the "provisions, purpose or spirit of the chapter in the proposal". *In re Kitchens*, 702 F.2d 885, 888 (11th Cir.1983). John Deere's Motion is correct that a good faith inquiry under § 1325(a)(3) of the Bankruptcy Code requires a careful examination of the totality of the circumstances surrounding the Debtor's Chapter 13 filing. *Chaffin*, 836 F.2d at 217. Such a determination should be made on a case by case basis. *In re Goeb*, 675 F.2d 1386, 1391 (9th Cir.1982). The burden of establishing good faith is on the debtor in confirmation proceedings, but with respect to dismissal, it is movant's burden to establish lack of good faith. *In re Ristic*, 142 B.R. 856 (Bkrtcy.E.D.Wis. 1992); *In re Cardillo*, 169 B.R. 8 (Bkrtcy. D.N.H.1994); *In re Klein*, 100 B.R. 1004 (N.D.Ill.1989).

John Deere fails to demonstrate bad faith under the totality of the circumstances test as it is commonly applied using, for example, such indices as debtor's earning capacity, extravagant living, zero per cent payments to unsecured creditors, discrimination among claimants in the same class or concurrent or multiple filings. *In re Aichler*, 182 B.R. 19 (Bkrtcy. S.D.Tex.1995), *In re Corino*, 191 B.R. 283 (Bkrtcy.N.D.N.Y.1995) [plan confirmed over the objection of a creditor despite

debtor's prepetition embezzlement scheme and her filing of four bankruptcy petitions in eight years]. John Deere cites to *In re Bush*, 120 B.R. 403, 408 (Bankr.E.D.Tex. 1990) as an example of a case in which this Court found a lack of good faith. Like the instant case, Bush involved a 36 month plan filed by Debtors who had enjoyed the benefit of a discharge in a prior Chapter 7 case. However, *Bush* is distinguishable in that the matter before the Court was confirmation, not dismissal. It is also distinguishable because, in *Bush*, the Debtor's spouse had not joined in the petition. The Court found lack of good faith in the *Bush* case under the circumstance that the non-debtor spouse had not dedicated her income to the Plan while the debtor spouse proposed covering all of the family's living expenses. No evidence has been offered by John Deere to support a finding that either Tammy or Terry Dickerson enjoys any income which has not been dedicated to their Plan.

■ John Deere correctly identifies the Debtors' ability to pay any amounts greater than those proposed under the Plan as a significant issue for the Court's consideration in determining the Debtors' good faith. To support its position, John Deere actually relies on two principal arguments: (1) Debtors' new home in California is 900 square feet larger than their former home in Texas, (2) Debtors' have changed employment and are now making less money than at their previous job.

As to the house in California, the testimony indicated that Debtors are leasing the house with some sort of option to purchase as a part of the lease. The question of the size of the house is not dispositive of the issues in this case. The question is whether or not the Debtors are engaging in some extravagant life style to the detriment of their creditors to the extent that it would be fundamentally unfair to allow them to proceed. The testimony indicated that the Debtors are paying $1,500.00 per month to live in the house and there is no evidence to indicate that this is out of line or unusual for a family of five. The testimony also shows that Debtors own a house in Henderson County, Texas which they are actively trying to market with the proceeds dedicated to this Chapter 13 Plan to fully pay their priority creditor, the Internal Revenue Service. The Movants simply fail to demonstrate any indicia of bad faith on the part of the Debtors in connection with their living arrangements.

Movants argue that Debtors have now accepted employment which pays less than they were previously earning. It is true that Debtors have taken a cut in pay but their explanation is rational and believable. Mr. Dickerson testified that his previous job was a dead end position with no chance for improvement and he feels that his present position has greater potential in the long run. There is simply no evidence that Debtor is engaged in any kind of scheme or plan to artificially reduce his income to harm his creditors. The Court can attribute no bad faith to the Debtors in connection with their present employment.

There were no other budget issues addressed in the Motion and a review of Debtors' schedules as well as the plan of reorganization, which were placed into evidence, show no glaring discrepancies or extravagant expenditures which would indicate that Debtors are living lavishly at the expense of their creditors.[3]

A considerable amount of testimony was elicited concerning the genesis of the nondischargeable judgments in Debtors previous Chapter 7 which precipitated the filing of this Chapter 13 proceeding. Under the "totality of the circumstances test," these

---

**3.** This is not intended to be a finding that Debtors' Plan is confirmable as filed. The inquiry in a motion to dismiss is whether or not the schedules, budget and plan make it apparent that Debtors should not be allowed to proceed with their proposed reorganization. The question of whether adjustments to the payment or the schedules need to be made based on Debtors ability to pay can be addressed at confirmation.

matters must be considered by the court as to whether they demonstrate some sort of egregious prepetition conduct that would constitute bad faith on the part of the Debtor. The Court cannot find from the evidence that this is the case. The evidence only demonstrated that Debtor chose not to contest the issue of dischargeability in his Chapter 7 proceeding. Whether this indicates that Debtor failed to defend because he lacked the funds to mount a defense or whether he conceded that the debts were in fact nondischargeable or whether he concluded that the better strategy would be to devote the resources that it would take to defend a dischargeability action to payments under a Chapter 13 simply do not appear from the record. With these possibilities, the Court cannot assume that there was some improper motive. Movant must prove that there is some improper motive and Movant has totally failed to do so.

 Debtors have amended their originally proposed 36 month plan, increasing the term of payment to 42 months. John Deere fails to demonstrate that the proposed payment to unsecured creditors over a period of forty-two months, especially given that such term exceeds that required by the Code under § 1325(b)(1)(B), is unreasonable based upon the records in this case. Nothing in the Code obligates a debtor to chose a five year plan. *In re Vensel,* 39 B.R. 866, 868 (Bkrtcy.E.D.Va., 1984). This court agrees with the Eighth Circuit that the amount of proposed repayment to unsecured creditors is but one of several factors that the courts must consider in determining whether a plan meets the spirit of § 1325(a)(4) and that "[i]f Congress desires to include a per se substantial repayment requirement, it can do so." *In re Estus,* 695 F.2d 311, 316 n. 11 (1982). At this time however, "a per se minimum requirement to unsecured creditors as an element of good faith would infringe on the desired flexibility of Chapter 13 and is unwarranted." *Ibid.* at 316.

See also *Flygare v. Boulden,* 709 F.2d 1344 (10th Cir.1983).

For the foregoing reasons, the evidence simply does not support a finding of lack of good faith under the totality of the circumstances test.

## CONCLUSION

John Deere's evidence fails to show that the dismissal of the Debtors' Chapter 13 case is warranted under the provisions of 11 U.S.C. § 1307. Therefore, John Deere's Amended Motion To Dismiss Case and the Amended Motion By Creditor Utraco Plant and Machinery, Ltd. must be denied.